IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM BUCK, <br><br> Plaintiff, <br><br> v. <br><br> DEBBIE KNAUER, *et al.*, <br><br> Defendants. | Case No. 18-cv-04195 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

William Buck alleges that Defendants were deliberately indifferent to his health when they unnecessarily extracted two of his teeth and then ignored his post-operative treatment needs while he was incarcerated at Stateville Correctional Center ("Stateville") and Menard Correctional Center ("Menard"). Buck filed this lawsuit pursuant to 42 U.S.C. § 1983, suing a number of defendants including medical provider, Wexford Health Sources, Inc. ("Wexford"), Wexford doctor Dr. Obaisi, Stateville warden Randy Pfister, and several prison transfer coordinators. Buck argues that the Defendants' deliberate indifference to his acute dental and oral health condition violated his Eighth Amendment rights. The Wexford Defendants and IDOC Defendants[1] have moved for summary judgment, and Buck has moved for partial summary judgment. For the reasons stated below, the IDOC Defendants' summary

---

[1] The IDOC Defendants are Debbie Knauer, Randy Pfister, Andrea Rigsby, Sandra Funk, Doug Stephens, and James Burzinski. The Wexford Defendants are Wexford, Ghaliah Obaisi as Independent Executor of the Estate of Saleh Obaisi, Lidia Lewandowska, Tina Tomaras, Tiffany Utke, Christina Witkowski, and Debra Connors-Johnson. Dr. Steven Newbold of the Wexford Defendants was previously dismissed with prejudice from the suit. (Dkt. 138).

1

judgment motion [180] is granted in part and denied in part; the Wexford Defendants' motion for summary judgment [187] is granted; and Buck's partial summary judgment motion [183, 189] is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The

controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND[2]

### A. Buck's Oral Health Care

Buck is an IDOC inmate who is currently incarcerated at Pontiac Correctional Center. WSOF ¶ 2.[3] Wexford has a contract with the State of Illinois to provide certain medical services to certain inmates incarcerated in certain IDOC facilities. *Id*. ¶ 3. Defendant Pfister was warden of Stateville at all relevant times. ISOF ¶ 4. On September 8, 2016, Buck was seen by Dr. Mitchell, a dentist at Stateville where he was confined at the time, and Dr. Mitchell determined Buck needed to have two teeth extracted. WSOF ¶ 11. On that day, Dr. Mitchell referred Buck to Joliet Oral Surgery for the evaluation, and Dr. Sandhu approved that referral on September 12, 2016. *Id*. ¶ 12. On September 20, 2016, Debra Connors-Johnson, Medical Records Director at Stateville, prepared a Certification of Service form to Joliet Oral Surgeons. *Id*. ¶¶ 5, 13. On September 27, 2016, a nursing note indicates that Dr. Obaisi placed a hold on Buck pending clearance by the dental department. *Id*. ¶ 23.

---

[2] The facts are taken from the parties' Rule 56.1 statements and are undisputed unless otherwise noted.

[3] "WSOF" is Wexford's Local Rule 56.1 statement of facts (Dkt. 190). "ISOF" is the IDOC Defendants' Local Rule 56.1 statement of facts (Dkt. 181). Buck's response to Wexford Defendants' 56.1 statement and his statement of additional facts ("PSAFW") is at Dkt. 208. Buck's response to IDOC Defendants' 56.1 statement and Buck's statement of additional facts ("PSAFI") is at Dkt. 204.

3

On September 20, 2016, oral surgeon Dr. Glenn Scheive extracted four teeth from Buck's mouth at Joliet Oral Surgeons. PSAFW ¶ 4. Dr. Scheive's office's medical records for Buck contain the following note, dated September 21, 2016: "Dr. Mitchell from Stateville called and asked 'why did we take #18 + #31.' She wants to speak to Dr. Scheive []. Dr. Scheive spoke with Dr. Mitchell. Our referral states ext. #17-18-31-32. Dr. Mitchell said it was wrong on their end." *Id*. ¶ 9.

Dr. Obaisi was the Medical Director at Stateville during September and October 2016. *Id*. ¶ 12. After the extraction of his four teeth in September 2016, Buck experienced open sores with exposed bone where the teeth were extracted, which became infected, facial swelling that made it difficult for him to speak, and terrible pain. *Id*. ¶ 13. Buck's medical team at Stateville—including his dentist, Dr. Mitchell—prescribed Buck treatment, through October 26, 2016, including antibiotics, pain medication, and heat packs. *Id*. ¶ 14 & PSAFI ¶ 2.

On October 24, 2016, Buck was seen by Dr. Mitchell, who prescribed heat packs, and scheduled a follow-up appointment in 3 days, and by a second doctor, who prescribed antibiotics and scheduled a follow-up appointment in 30 days. PSAFW ¶ 21. Dr. Mitchell requested a dental prosthetic to replace Buck's two wrongfully extracted teeth on September 21, 2016. PSAFI ¶ 7. This request was not approved until December 18, 2016. *Id*. ¶ 8.[4] On October 26, 2016, Mr. Buck was receiving

---

[4] The IDOC Defendants sometimes respond to facts as "undisputed" but add vague objections e.g. "undisputed and immaterial." (Dkt. 218). This is not compliant with LR 56.1(e). PSAFI ¶¶ 2, 7, 8, 10, 12 and 15 are deemed admitted. *See Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607 (7th Cir. 2017).

4

ongoing medical treatment, and had pending appointments with two doctors at Stateville. *Id.* ¶ 15.

### B. Buck's transfer from Stateville

An attempt was made to transfer Buck from Stateville to Menard on September 27, 2016. PSAFW ¶ 15. A September 27, 2016 note in Buck's medical records states that Buck told the reporting nurse that he did not want to transfer "because of pending dental works, currently been treated for dental abscess by Dr. Mitchell. Called Dr. Mitchell who said i/m should not be transferred because of ongoing dental issues. Dr. Obaisi was also notified who ordered to place i/m on medical hold pending clearance by dental." *Id.* ¶ 16. Dr. Mitchell placed Buck on medical hold because of complications following the extraction. *Id.* ¶ 17. No document in the record indicates that Buck's medical hold was ever lifted. *Id.* Wexford's 30(b)(6) designee (and Stateville Wexford dentist) testified that he would expect it would take "months" for Buck to heal following the extraction of his teeth in September 2016. *Id.* ¶ 18.

On October 26, 2016, Buck was transferred from Stateville to Menard. *Id.* ¶ 22. Two days before his transfer, Buck was seen in the healthcare unit and the doctor who examined him noted he would need to be seen for a follow up visit in 30 days. ISOF ¶¶ 19, 21. The IDOC Defendants stated there was no specific reason why Buck was transferred from Stateville to Menard. PSAFW ¶ 23.[5] No evidence in Buck's medical records indicates the approval of his prosthetic on December 18, 2016 was ever forwarded to Menard or that Buck ever received the prosthetic. *Id.* ¶ 27. Buck

---

[5] Buck identifies the "Transfer Defendants" as Pfister, Rigsby, Burzinski, Stephens, and Funk. (Dkt. 203 at 6).

had exposed bone at the sites where his teeth had been extracted. *Id*. ¶ 38. The day after arriving at Menard, on October 27, 2016, Buck was seen by a dentist and was seen four different times by nursing staff on that day. ISOF ¶¶ 26, 27.

In his Second Amended Complaint (SAC) [58], Buck brings two counts alleging that his Eighth Amendment rights were violated, related to the removal of his two healthy teeth (Count I), and to the post-operative dental care after he was transferred to Menard. (Count II).

## ANALYSIS

### I. The Eighth Amendment

The Eighth Amendment requires prison officials to provide healthcare to incarcerated inmates who cannot obtain healthcare on their own, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021), and imposes liability on those who act with deliberate indifference to a substantial risk of serious harm to inmates, *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). A plaintiff alleging deliberate indifference must show: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *See id*. at 694. In this case, Defendants do not dispute that Buck's medical condition was objectively serious, so only the second prong is in dispute.

The second prong, the subjective inquiry, requires a plaintiff to provide evidence that each defendant acted "with a 'sufficiently culpable state of mind.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To establish deliberate indifference, a plaintiff

must show that the defendant '*actually* knew of and disregarded a substantial risk of harm.'" *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc)).

## II.     The IDOC Defendants

The IDOC Defendants argue that Buck's deliberate indifference claim against them cannot survive summary judgment. The Court disagrees as to Debbie Knauer and Andrea Rigsby.

First, Buck cites undisputed evidence that Rigsby was the grievance officer at Stateville who submitted the request for his transfer to Menard, and that she spoke with Buck shortly before his transfer, saw his condition, and told him he would be transferred anyway. (PSAFI ¶¶ 10, 12). Buck testified that he spoke to Rigsby and told her about his mouth and that he was in "really bad shape", but Rigsby told him he still "had to go." *Id.* ¶ 30. Buck also testified that Rigsby saw him when he was in the hospital when his mouth was "still messed up." (Buck Dep. (Dkt. 182-12, Exh. 12), p. 211). This evidence taken together, namely Rigsby's role as the official who requested Buck's transfer, that she saw Buck when he was in the hospital, and her personal conversation with him shortly before his transfer, gives rise to a jury question about whether Rigsby was deliberately indifferent to Buck's medical condition. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (if inmate's communication to a prison administrator gives "sufficient notice to alert [official] to 'an excessive risk to inmate health or safety,'" then "the refusal or declination to

7

exercise the authority of his or her office may reflect deliberate disregard.") (quoting *Farmer*, 511 U.S. at 837)).

As for Knauer, she was the Administrative Review Board officer who reviewed Buck's grievance requesting to be transferred back to Stateville and to be seen by an oral surgeon. Buck argues that Knauer's delay and denial denied him care he needed for his teeth. The IDOC Defendants contend that Knauer's mere review of Buck's grievance cannot give rise to liability. They rely on *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007), that explains "a guard who rejects an administrative complaint about a completed act of misconduct does not [violate the Constitution]". However in *Perez v. Fengolio*, 792 F.3d 768 (7th Cir. 2015), the Court held that grievance officials could be individually liable for deliberate indifference to an inmate's serious medical condition in violation of the Eighth Amendment. *See id*. at 781–82. In that case, plaintiff alleged that the defendants "each obtained actual knowledge of [plaintiff's] objectively serious medical condition and inadequate medical care" through plaintiff's detailed grievances and other correspondence, and each official "failed to exercise his or her authority to intervene on [his] behalf to rectify the situation." *Id*. at 782. This suggested defendants "either approved of or turned a blind eye to [plaintiff's] allegedly unconstitutional treatment." *Id*.

Here, Buck's December 8, 2016 grievance [182-13] describes in detail what happened in September 2016 with the extraction of his teeth and his resulting complications and pain. In the grievance Buck specifically requests to "be transferred back to Stateville [and] seen by an outside oral surgeon." Knauer received the

8

grievance on December 12, 2016. She also wrote that the grievance was "medical." However it was not until four months later, on April 19, 2017, that Knauer responded, stating that the grievance "will not be addressed" because transfers are an administrative decision. Accordingly, Knauer was alerted to Buck's medical condition and complications and was aware of his specific request to remediate the situation. Nevertheless she waited more than four months to respond and did so with a simple denial. *See Perez*, 792 F.3d at 782 ("once an official is alerted to an excessive risk to…health through a prisoner's correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard."); *see also Degrado v. Carter et al.*, No. 13-CV-05978, 2021 WL 3737712, at *6 (N.D. Ill. Aug. 24, 2021) (denying summary judgment to prison official who denied plaintiff's grievance because official "d[id] not address his responsibility to refer or investigate."). A reasonable jury could find that Knauer's delay and denial of Buck's grievance resulted in him being denied care. For example, Defendants do not dispute that Dr. Mitchell requested a prosthetic for Buck, it was eventually approved, but Buck never received the prosthetic. Defendants do not cite any evidence that the approval for the prosthetic was communicated to officials at Menard. The Court therefore finds there is a genuine issue of material fact regarding whether Knauer was deliberately indifferent to Buck's medical condition.

As to the remaining IDOC Defendants, Buck has not shown there is an issue of material fact regarding their liability. In contrast to Rigsby, Buck does not cite any evidence he spoke to Pfister in person around the time of his transfer. Buck argues

that he wrote grievances to Pfister about his medical treatment and mouth. Without more, this does not create an issue of material fact that Pfister had actual knowledge of the excessive risk to Buck's health at the time of his transfer. Indeed "[a] failure to act in the face of an obvious risk of which the official *should* have known is insufficient to make out a claim." *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). In contrast to *Brinson v. Wexford Health Sources, Inc.*, No. 17 C 1659, 2020 WL 1139250, at *6 (N.D. Ill. Mar. 9, 2020), relied on by Buck, the plaintiff had a personal conversation Pfister and explained his medical condition, explained his need to return to UIC for treatment, and requested not to be transferred to Menard. That did not happen here.

Finally, as to Funk, Stephens and Burzinski, Buck does not cite evidence that they knew about (1) the medical hold, (2) his surgery, or (3) or that he had any appointment or scheduled follow-up to his surgery. The subjective component of the Eighth Amendment analysis requires that "the defendant '*actually* knew of and disregarded a substantial risk of harm.'" *Mitchell*, 895 F.3d at 498 (quoting *Petties*, 836 F.3d at 728); *see also Degrado*, 2021 WL 3737712, at *6 (granting summary judgment for defendant where evidence of defendant's subjective knowledge of plaintiff's serious medical condition was lacking); *cf. Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 939 (7th Cir. 2015) (prison guard knew inmate had dentist appointment, told him it was cancelled, and refused inmate's request to wait for treatment despite inmate showing guard his abscessed tooth and describing his pain). (Moreover, Buck does not cite evidence that Funk, Stephens and Burzinski had authority to impact the decision of whether he was transferred). Thus no reasonable jury could find that these

10

defendants were deliberately indifferent in order to establish an Eighth Amendment violation.

In sum, the IDOC Defendants' summary judgment motion [180] is granted in part and denied in part. Judgment is granted in favor of Defendants Pfister, Funk, Stephens and Burzinski. Summary judgment is denied as to Defendants Knauer and Rigsby.

### III. Wexford Defendants

The Court next turns to the Wexford Defendants' motion. The Wexford Defendants argue that no reasonable jury could find that they were deliberately indifferent. Buck initially concedes that Nurse Witkowski was not employed at Stateville in September and October of 2016, showing she should be dismissed as a defendant.

Turning to Dr. Obaisi, Buck argues that Dr. Obaisi "allowed him to be transferred" to Menard, which interfered with Buck's medical care. (Dkt. 207 at 4, 8). Buck's contention is that Dr. Obaisi and Dr. Mitchell initially placed Buck on medical hold in September 2016 and then later Obaisi allowed Buck to be transferred. In *Rasho v. Elyea*, 856 F.3d 469 (7th Cir. 2017), relied on by Buck, plaintiff testified that the doctor defendants "each explicitly told him that he was transferred in response to his complaints." *Id*. at 476. But Buck does not cite any evidence that Dr. Obaisi told him he was being transferred for retaliatory reasons or because of "prison politics."[6] In

---

[6] The evidence Buck cites to support that "prison politics" was the reason for his transfer is his testimony that Dr. Mitchell told him that "the administration" and others including Dr. Obaisi "wanted me transferred." PSAFW ¶ 24. It is not clear from this testimony whether Dr.

11

*Brinson*, 2020 WL 1139250, the evidence showed that Dr. Obaisi lifted plaintiff's medical hold so that plaintiff could be transferred from Stateville to Menard. *Id.* at *3, 8. Buck concedes there is no evidence in the record of the medical hold being lifted. (Dkt. 207 at n. 2). And Buck provides no evidence that Dr. Obaisi lifted the hold so that Buck could be transferred.

Next, Buck alleges that Debra Connors-Johnson erred in the approval paperwork and failed to accurately transmit Dr. Mitchell's referral for the extraction of Buck's teeth. However, it is well-settled that "without more, a mistake in professional judgment cannot be deliberate indifference." *Eagan*, 987 F.3d at 688 (cleaned up). Buck points to Dr. Scheive's testimony about Certification of Service paperwork he receives from Wexford being incorrect "10%" of the time. PSOF ¶ 6. Even accepting Buck's characterization of Dr. Scheive's testimony, which Defendants dispute, it does not support his argument a reasonable jury could find Connors-Johnson was deliberately indifferent. Buck does not cite testimony by Dr. Scheive that Connors-Johnson sent incorrect paperwork before. This is not a case of a defendant repeatedly failing to provide treatment, as in the two cases cited by Buck. In *Board v. Farnham*, 394 F.3d 469, 485 (7th Cir. 2005), the guards on multiple occasions did not give the inmate his inhaler. In *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013), the Seventh Circuit held that a jury could reasonably find that the Wexford dentist "repeatedly delayed treatment" and "was more than negligent in failing to spare

---

Obaisi specifically told Dr. Mitchell that he wanted Buck transferred. In any event this is hearsay, which is "inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Noone v. Presence Hosps. PRV*, 149 F. Supp. 3d 904, 908 (N.D. Ill. 2015) (cleaned up).

12

[plaintiff] thirty months of serious dental pain by providing the treatment that she herself had already decided was necessary." By contrast, medical records director Connors-Johnson completed one form incorrectly. True, this led to serious consequences for Buck but Buck fails to cite authority that a mistake in this context rises to the level of deliberate indifference. Buck therefore has not provided evidence that Johnson "acted with a sufficiently culpable state of mind"— "mere negligence or even gross negligence is not enough." *Munson v. Newbold*, 46 F.4th 678, 681 (7th Cir. 2022).

Finally, the Court addresses Nurses Lewandowska, Tomaras, and Utke. Buck says these nurses "refused—deliberately and repeatedly, for weeks on end—to provide [him] heat packs that had been prescribed by his dentist, Dr. Mitchell, to treat his pain and swelling." (Dkt. 207 at 11). Dr. Mitchell prescribed antibiotics, pain medication, and heat packs. Buck does not argue that he did not receive the antibiotics or pain medication. He also does not contend that he *never* received heat packs. (see Dkt. 208 at 22-23). Indeed the record shows he did receive heat packs. These nurses testified in this case that they provided treatment based on their education, training and experience.[7] *See Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim."); *see also Richter v. Mitchell*, No. 18 C 3492, 2022 WL 1988986, at *4 (N.D. Ill. June 6, 2022) (the fact some medical

---

[7] Buck's objection that this testimony is "self-serving" is not convincing. "Self-serving" affidavits and testimony can be "a legitimate method of introducing facts on summary judgment." *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) (cleaned up).

13

providers prescribed heat packs but defendant doctor did not did not give rise to a triable issue about defendant's deliberate indifference). Again, negligence or even gross negligence is not enough. *Munson*, 46 F.4th at 681. Here the record does not show that the nurses ignored a known and substantial risk of serious harm to Buck in not providing him all of the heat packs he requested.

Finally, because the Court is granting summary judgment in the Wexford Defendants' favor, there is no basis for liability against Wexford under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Munson*, 46 F.4th at 682. For these reasons, summary judgment is granted in favor of the Wexford Defendants.

**IV. Buck's motion**

Buck moves for partial summary judgment on Count II and three groups of defendants: (1) the nurses, (2) Wexford and (3) the prison officials he spoke with on the day of the transfer. Buck argues these defendants were deliberately indifferent to his serious medical condition and he is entitled to judgment in his favor. However the Court has ruled in favor of the nurses and Wexford, granting them summary judgment. So Buck cannot prevail on his claim against them.

As to the Transfer Defendants, the Court has found a genuine issue of material fact exists as to Rigsby but not the other Transfer Defendants. Buck's motion and reply brief focus only on officials Burzinski, Stephens, and Funk: "on his journey to Menard, three senior prison officials saw Mr. Buck in obvious distress, heard his request for medical assistance, and brushed him off." (Dkt. 183 at 19; Dkt. 221 at 4). Thus Buck appears to move for summary judgment only as to Burzinski, Funk, and

14

Stephens. For completeness, to the extent Buck sought judgment against Rigsby, as explained earlier, there is an issue of fact for the jury about Rigsby's liability.[8] Judgment in Buck's favor against any of these defendants at this stage is not warranted.

## CONCLUSION

For the stated reasons, the IDOC Defendants' summary judgment motion [180] is granted in part and denied in part; the Wexford Defendants' motion for summary judgment [187] is granted; and Buck's partial summary judgment motion [183, 189] is denied. The defendants remaining in this case are defendants Knauer and Rigsby.

E N T E R:

Dated: January 4, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[8] Indeed Buck does not cite evidence that Rigsby was personally aware of a medical hold on Buck at the time of his October 26 transfer or that he told her he was under a hold. Drawing reasonable inferences in defendants' favor on review of Buck's motion, the evidence does not demonstrate that Rigsby actually knew of and disregarded a substantial risk of harm such that summary judgment against her is warranted.

15